UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
STANLEY DAVIS,

                Plaintiff,

        - against -

ALEXANDER H. GILLESPIE, TIMOTHY
GILMARTIN, RAPHAEL PEARL,[1]
GOLDBERG & SEGALLA LLP, SIBEN &
SIBEN, JUDGE MARTHA LUFT, JUDGE
DAVID REILLY, ANDREA MIMS,
JOHN PETERSON, and WENDY STYNES,

                Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-6207 (PKC) (JRC)

PAMELA K. CHEN, United States District Judge:

      *Pro se* plaintiff Stanley Davis ("Plaintiff") brings this action, which is the latest in a line of related cases he has filed, under 42 U.S.C. § 1983 against Defendants Alexander H. Gillespie, Timothy Gilmartin, Raphael Pearl, Goldberg & Segalla LLP, Siben & Siben, Judge Martha Luft, Judge David Reilly, Andrea Mims, John Peterson, and Wendy Stynes. (Compl., Dkt. 1.) Plaintiff seeks $100 million in damages. (*Id.* at ECF 8.)[2] Before the Court are Defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and Plaintiff's one-page motion for default judgment against Defendants.

---

[1] The Court notes that, although Defendant Pearl's name is listed in the Complaint and in the case caption of the docket as "Rapheal Pearl," subsequent briefing makes clear that Plaintiff misspelled Mr. Pearl's name in his Complaint. (*See, e.g.*, Dkt. 31 (Defendant Pearl's letter requesting a pre-motion conference for an anticipated motion to dismiss).) Therefore, the Court refers to Mr. Pearl using his name's correct spelling rather than the spelling currently listed in the case caption.

[2] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

For the following reasons, the Court grants Defendants' motions to dismiss this case. Plaintiff's motion for default judgment is denied.

## BACKGROUND

Plaintiff's Complaint, though lengthy and difficult to decipher, is stylized as a 42 U.S.C. § 1983 claim stemming from unfortunate circumstances surrounding the killing of Plaintiff's son, Stanley Earl Davis Jr., at the Commack Hotel in Long Island.  Plaintiff has initiated several state and federal litigations relating to his son's death.[3]   In the current action, Plaintiff names ten Defendants, each of whom were variously involved with underlying litigation brought by Plaintiff in the aftermath of the 2010 killing.

## I.      Defendants

### A.      The Attorney Defendants

In his Complaint, Plaintiff alleges that the lawyers for the Commack Hotel—Defendant Goldberg & Segalla LLP ("GS LLP")—and Plaintiff's own attorneys hired to represent him as the administrators of his son's estate—Defendant Siben & Siben ("Siben")—"hid 12 working videos" from cameras outside of the Commack Hotel, thus committing "Brady law [violations]" and "misleading the whole case."  (Compl., Dkt. 1, at ECF 7.)  In addition to these two private law firms, Plaintiff also sues Alexander H. Gillespie ("Gillespie"), who is an attorney for Great American E&S Insurance Company ("Great American"), which was the insurance provider for the Commack Hotel.[4]

---

[3] The docket numbers of the related actions that Plaintiff has brought in federal court are: 15-CV-7009; 18-CV-303; 21-CV-456; 21-CV-2238; 22-CV-6438; 22-CV-6472.

[4] Great American sued Plaintiff and others in state court seeking a judgment that Great American was obligated to provide insurance coverage for the incident only up to $25,000 based on the liability insurance policy that Great American had provided to the Commack Hotel.  Judge David T. Reilly of the Supreme Court, Suffolk County—a Defendant in this case—granted Great American's motion for summary judgment.  The Second Department of New York's intermediate

**B.      The State Defendants**

In addition to the private actors, Plaintiff sues Judge David Reilley of the New York Supreme Court, 10th Judicial District ("Judge Reilley") and his law clerk Timothy Gilmartin ("Gilmartin"); and Judge Martha Luft of the New York Supreme Court for Suffolk County ("Judge Luft"), and her law clerk Andrea Mims ("Mims") for "violating [Plaintiff's] 1, 4, 5, [and] 14 amendment [rights] along with jurisdiction misconduct and their law clerk [] knew of the 12 working cameras and when [sic] along with the fraud." (*Id.*)  Plaintiff's claim against Wendy Stynes ("Stynes"), Associate Deputy Clerk at the New York State Appellate Division, Second Judicial Department, is that she allegedly "held paperwork to make sure the 12 working cameras won't [sic] be seen and falsifying documents." (*Id.* at ECF 9.)  Plaintiff explains John Peterson's inclusion as a Defendant in his Complaint as the person who "took the 12 working cameras from the Commack Hotel on the night 11/13/2010," but does not make any specific allegation of wrongdoing by Peterson. (*Id.* at ECF 7.)  Finally, Plaintiff sues Suffolk County Assistant District Attorney Raphael Pearl ("Pearl"), for allegedly not bringing the 12 working cameras to the attention of the court in the underlying criminal proceeding. (*Id.*)

**II.    Relevant Procedural History**

Plaintiff filed his Complaint on October 14, 2022.  In the Complaint, Plaintiff indicates that he is suing Defendants under 18 U.S.C. § 1983 for violations of, *inter alia*, 18 U.S.C. § 1519, which deals with the destruction, alteration, or falsification of records in federal investigations; Federal Rules of Civil Procedure 26 and 37, which deal with civil litigants' disclosure duties and

---

court affirmed.  *See Great American E&S Ins. Co. v. Commack Hotel, LLC*, 179 N.Y.S.3d 336 (N.Y. App. Div. 2022), *leave to appeal denied sub nom. Great Am. E & S Ins. Co. v. Commack Hotel, LLC*, 39 N.Y.3d 913 (2023).

the failure to cooperate during discovery; "Brady law;" and "more the color of law." (Compl., at ECF 6–7.) Broadly speaking, Plaintiff's claim is focused on the alleged falsification or concealment of 12 video cameras that may have captured footage pertinent to the killing of Plaintiff's son at the Commack Hotel.

This action is only one of a number of cases that Plaintiff has brought in both state and federal court arising from the same set of facts. Plaintiff originally filed this lawsuit in the Central Islip courthouse and it was assigned to the Honorable Joan M. Azrack, who promptly recused herself.[5] (Dkt. 8.) Plaintiff's case was then assigned to the Honorable Gary R. Brown. (*Id.*) After Plaintiff filed a letter asking whether the court was following "common law" or "military law," and that it was not possible to be "the judge as well as the defendant on a case," Judge Brown also recused himself. (*See* Dkt. 25, 26.) This case was re-assigned to the undersigned on December 15, 2022. Shortly before Judge Brown recused himself, Plaintiff filed a letter moving "for default judgment on this case" due to Defendants' alleged lack of an answer. (Dkt. 23, at 1.)

All Defendants have moved to dismiss Plaintiff's lawsuit for failure to state a claim for which relief can be granted. (*See* Dkts. 11, 13, 16, 18, 31.) In response to these motions, Plaintiff submitted a 173-page filing where he alleges, "This whole matter is one big 360 circle involving everyone, and all relate to fraud on the court, falsifying evidence, hiding evidence, working together." (*See* Dkt. 37, at ECF 8.)

---

[5] The Court does not recite in detail the procedural history of Plaintiff's various state court actions. A fuller recitation of these facts can be found in Judge Azrack's July 2022 Memorandum and Order *sua sponte* dismissing Plaintiff's complaint in a different but related case, which shared six of the same defendants as the present action and arose out of similar facts. *See Davis v. Suffolk Cnty. Dist. Att'y*, No. 21-CV-2238 (JMA)(ARL), 7/11/2022 Mem. & Order, Dkt. 14.

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim for relief pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability' requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp.*, 712 F.3d at 717 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks and citations omitted)). "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations." *Pension Benefit Guar. Corp.*, 712 F.3d at 717 (quoting *Iqbal*,

556 U.S. at 679).

      In reviewing a *pro se* complaint, the Court must be mindful that the plaintiff's pleadings

should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976));

*see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts

"remain obligated to construe a *pro se* complaint liberally").

## DISCUSSION

**I.     Defendants' Motions to Dismiss**

    **A.     Plaintiff's Failure to State a Section 1983 Claim**

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . . subjects, or causes to be subjected, any
> citizen of the United States . . . to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be liable to the
> party injured[.]

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for

vindicating federal rights elsewhere conferred by those parts of the United States Constitution and

federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also*

*Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).  To state a Section 1983 claim, a plaintiff

must allege that the conduct at issue was "committed by a person acting under color of state law"

and that the conduct deprived the plaintiff "of rights, privileges, or immunities secured by the

Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)

(quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

"[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted).  However, the Second Circuit has identified three main tests for determining when the actions of a "nominally private entity are attributable to the state" for purposes of Section 1983:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (alteration in original) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (citations omitted).

### 1.    The Attorney Defendants

Here, Plaintiff's claims against the Attorney Defendants—Defendants Siben, GS LLP, and Gillespie—fail because they are all private entities beyond the reach of Section 1983 liability. While Plaintiff mentions "more the color of law" in his Complaint, he alleges no facts that demonstrate, even on a liberal reading, that the actions of these Defendants may be "fairly attributable" to the state.   Therefore, the Complaint must be dismissed as to the Attorney Defendants.

Furthermore, Plaintiff does not provide any facts to support his conclusory allegations of wrongdoing by these Defendants.  A complaint that offers nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "tenders naked assertions devoid of further factual enhancement" is insufficient. *Iqbal*, 556 U.S. at 678 (alteration, internal quotation marks,

7

and citations omitted). Plaintiff indicates that the Attorney Defendants have violated his constitutional rights through "Fabrication of Evidence" and "conspiracy." (Dkt. 37, at ECF 36.) But making a speculative allegation of conspiracy between the Attorney Defendants and the State Defendants, all of whom work for the government, also does not make out a Section 1983 claim. *See Silvels v. New York*, 81 F. App'x 361 (2d Cir. 2003) (affirming the district court's dismissal of a § 1983 lawsuit against two Suffolk County Supreme Court judges and noting that the allegation of a conspiracy between a judge and prosecutor to predetermine the outcome of a judicial proceeding does not pierce the immunity extended to judges and prosecutors); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.") (citations omitted); *Morpurgo v. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 331 (E.D.N.Y. 2010) ("To sustain a claim for conspiracy under Section 1983, a plaintiff must demonstrate that the defendant acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds, that violated the plaintiff's rights.").

Accordingly, Plaintiff has failed to state a claim against the Attorney Defendants.

2.      The State Defendants

Defendants Pearl, Justice Reilley, Justice Luft, Gilmartin, Mims, and Stynes assert that Plaintiff's lawsuit against them is barred under the doctrine of sovereign immunity. The Court agrees.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity[.]" *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration, internal quotation marks, and citation omitted). "Congress has not abrogated sovereign

immunity for Section 1983 claims, and New York has not waived it." *See Hahn v. New York*, 825 F. App'x 53, 54 (2d Cir. 2020) (summary order) (first citing *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and then citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39–40 (2d Cir. 1977)).  Eleventh Amendment sovereign immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (citation omitted).

The Supreme Court of the State of New York is part of the New York State Unified Court System, *see* N.Y. Const., art. 6, § 1(a), which "is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity," *Gollomp*, 568 F.3d at 368 (internal citation omitted).  Therefore, claims against Defendants Judge Reilley, Judge Luft, Gilmartin, Mims, and Stynes—all of whom are members of New York State's unified court system—must be dismissed as barred by the Eleventh Amendment.  *See Joseph v. Sup. Ct. of N.Y.*, No. 21-CV-1685 (PKC) (PK), 2021 WL 2414291, at *3 (E.D.N.Y. June 14, 2021); *see also Ajaero v. Entire App. Div., App. Term*, No. 19-CV-11272 (CM), 2020 WL 137122, at *2 (S.D.N.Y. Jan. 10, 2020) (dismissing Section 1983 claims against "the Appellate Division, Appellate Term; Supreme Court; Criminal Court; Family Court; and all other inferior courts within the State of New York" as frivolous and barred by sovereign immunity), *appeal dismissed sub nom.*, 2020 WL 4590111 (2d Cir. July 8, 2020); *Murray v. Guzman*, No. 19-CV-1959 (CM), 2019 WL 1745744, at *3 (S.D.N.Y. Apr. 17, 2019) (dismissing Section 1983 claims against the New York Supreme Court as barred by sovereign immunity).

Defendant Pearl—a Suffolk County Assistant District Attorney—is also an officer of the state for purposes of the Eleventh Amendment.  *See Woodward v. Office of Dist. Atty.*, 689 F. Supp. 2d 655, 659 (S.D.N.Y. 2010) ("The District Attorney's Office is an agency of the State of

New York.")  Furthermore, "[w]hen prosecuting a criminal matter, the district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county."  *Ying Jin Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993).  Thus, the action against ADA Pearl is also barred by sovereign immunity.

### 3.    Court Defendants and Judicial Immunity

Beyond sovereign immunity, judges, law clerks, and law department employees are protected by judicial immunity.  *See Jackson v. Pfau*, 523 F. App'x 736, 737 (2d Cir. 2013) (affirming the dismissal of a complaint against law clerks and Clerks of Court based on the fact that judicial immunity protects actions closely related to the judicial process).  Judicial acts—even if they are alleged to have been done maliciously or corruptly—are not subject to civil liability. *See Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978) (finding state court judge absolutely immune from § 1983 suit where that judge had power to entertain and act upon motions in an underlying case).  "The Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature."  *See Brady v. Ostrager*, 834 F. App'x 616, 618 (2d Cir. 2020) (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)).  The rationale undergirding the doctrine of judicial immunity is ensuring that judicial officers are protected in doing their jobs and can effectuate their duties without fear of retribution or intimidation by litigants before the court.  *See Forrester v. White*, 484 U.S. 219, 225 (1988) (discussing the purpose of judicial immunity).[6]  Judge Reilley and Judge Luft were the judges

---

[6] In their motion to dismiss, the Court Defendants attach several pages of email correspondence from the Plaintiff in which he repeatedly threatens to sue government personnel, "press[] charges on all federal people" (Dkt. 16-1, at ECF 10), and "ask[] for criminal charges" against various governmental offices (*id.* at ECF 9).  While the Court is sympathetic to Plaintiff's anguish over the death of his son, Plaintiff's actions against members of the court system are of the exact nature that the doctrine of judicial immunity was designed to protect.  Indeed, "the nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and

involved in Plaintiff's underlying state lawsuit[7] and any actions they took in those cases were judicial acts for which they are afforded immunity.

### B.     Claims of "Brady Law" Violations

Plaintiff's claims of a *Brady* violation are not viable.

Plaintiffs may bring § 1983 lawsuits involving claims of violations of prosecutors' disclosure obligations as set forth in *Brady v. Maryland*, 373 U.S. 83, 87 (1963) in an underlying criminal matter.  *See Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) (holding that a former prisoner's allegations regarding the withholding of evidence at his underlying criminal trial would have impeached the main State witness were sufficient to state § 1983 *Brady* claim). *Brady* is not applicable, however, to Plaintiff's claims at issue here because Plaintiff is not a criminal defendant.  *See Jabar v. United States Dep't of Just.*, 62 F.4th 44, 50 (2d Cir. 2023) ("[] *Brady* and its progeny articulate an affirmative duty of disclosure, implicit in the Due Process Clause of the Constitution, that requires *prosecutors* to turn over certain materials to a *defendant in a criminal case*.") (emphasis added).

The Legal Defendants have no legal obligation to disclose information to Plaintiff under *Brady* because they are private lawyers and *Brady* applies only to lawyers for the government.  *See Miles v. Conway*, 739 F. Supp. 2d 324, 339 (W.D.N.Y. 2010) ("The *Brady* rule requires State as well as Federal prosecutors must turn over exculpatory and impeachment evidence, whether or not requested by the defense, where the evidence is material either to guilt or to punishment.")

---

ungovernable desires that people can have."  *White*, 484 U.S. at 226.  Plaintiff's disappointment with various court actions on the state and federal levels does not change the fact that this Court cannot grant him relief in this case.

[7] The case is the Suffolk Supreme Court case captioned *Davis v. Commack Hotel, LLC*, Index No. 12197/2011.

(collecting cases)).  The State Defendants have no legal obligation to disclose information to Plaintiff under *Brady* because Plaintiff was not a criminal defendant in the prosecution involving his son's murder, and *Brady* does not create any right for crime victims' families to receive this information from the State Defendants.

### C.      Plaintiff's Other Claims

To the extent Plaintiff argues that Defendants violated Federal Rules of Civil Procedure 26 and 37—governing discovery and disclosure rules in civil litigation—that claim is not actionable in this case because this Court may only enforce discovery under the Federal Rules in cases before it, not in state court proceedings.  *See* Fed. R. Civ. P. 1 ("The Federal Rules of Civil Procedure are designed to regulate conduct in federal court.")  Since Plaintiff seeks disclosure of material relating to a state court criminal action, this Court cannot take any action under Federal Rule of Civil Procedure ("FRCP") 26 or 37.

Though Plaintiff raises a claim under 18 U.S.C. § 1519, he is unable to bring such a claim because that statute does not provide for a private cause of action.  *See Hardy-Graham v. Southampton Just. Ct.*, No. 20-CV-981 (JS) (SIL), 2021 WL 260102, at *3 (E.D.N.Y. Jan. 25, 2021) (dismissing a claim brought under 18 U.S.C. § 1519 because there is no private cause of action under that criminal statute) (collecting cases)).

## II.      Plaintiff's Motion for Default Judgment

Plaintiff's motion for default judgment is denied.  Plaintiff filed a one-page letter on December 1, 2022 moving for default judgment.  (Dkt. 23.)  In his filing, Plaintiff says that he had not received "any answer or anything from any of the defendants."  (*Id.*)

Under FRCP 55, a default judgment may be sought against a party who has "failed to plead or otherwise defend" against an action.  Fed. R. Civ. P. 55(a).  The decision whether to enter default

judgment is committed to a district court's discretion.  *See Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015).  A default judgment is "the most severe sanction which the court may apply."  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (*citing Cody v. Mello,* 59 F.3d 13, 15 (2d Cir. 1995)).  Additionally, courts maintain a "strong preference" for resolving disputes on the merits.  *Pushkin v. Nussbaum*, No. 10-CV-9212 (JGK) (DCF), 2011 WL 4063493, at *1 (S.D.N.Y. Aug. 12, 2011) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)).

Under FRCP 12, unless another time is specified by the rule or a federal statute, a defendant has 21 days after being served with a summons and complaint to answer.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  All Defendants were served with the summons and complaint on October 17, 2022, and their answers were due on November 7, 2022.  (Dkt. 5.)  Defendants GS LLP and Siben filed their respective motions before the answer deadline in this case.  (*See* Dkts. 11, 13, 14.)[8]  The State Defendants filed their motion on November 8, 2022, one day after the answer deadline, and Defendant Gillespie filed his motion the next day, on November 9, 2022.  (Dkts. 16, 18.)

Although the motions of the State Defendants and Defendant Gillespie were filed one to two days late, Plaintiff fails to establish the necessary culpability of either the State Defendants or Defendant Gillespie to warrant dismissal.  *See Davis v. Annucci*, No. 14-CV-6378 (JWF), 2017 WL 3017510, at *2 (W.D.N.Y. July 14, 2017) (declining to enter default judgment against a defendant who filed an answer one day late); *Hollingsworth v. City of New York*, No. 95-CV-3738 (RWS), 1997 WL 91286, at *2 (S.D.N.Y. Mar. 4, 1997) (stating culpability is typically shown by "persistent refusal to comply with a discovery order").

---

[8] Consistent with Judge Brown's Individual Rules, these Defendants filed pre-motion conference letters regarding their anticipated motions to dismiss.  *See* Individual Rules of District Judge Gary Brown, at 3.  Under Judge Brown's Individual Rules, "[f]or the purposes of time requirements for the filing of answers and motions under FRCP 12(a) and 56(b), . . . a pre-motion conference letter will be considered the equivalent of the motion itself."  *Id*. at 4.

Defendant Pearl also filed his motion belatedly, on January 10, 2023, and the Court directed Plaintiff to respond to Pearl's filing.  (*See* January 13, 2023 Docket Order.)  The following week, Plaintiff sent a letter to the Court stating that he "never received ANY notice from ANY party involved regarding this matter," and requested that the Court mail all responses to him or direct the parties to do the same.  (Dkt. 34.)  The Court thereafter sent all pending motions to dismiss to Plaintiff, and Plaintiff submitted his response.  (*See* 2/2/2023 Docket Order; Dkt. 37.)  Although Defendant Pearl's motion to dismiss was not filed within the 21-day deadline of FRCP 12, the Court in its discretion declines to find Defendant Pearl in default in the absence of evidence that the delay in filing of Pearl's motion was willful.  Furthermore, because Plaintiff was promptly provided Pearl's motion and was given an opportunity to respond to it, any prejudice was rectified, and the Court finds no reasonable basis for entering a default order against Defendant Pearl.[9]

Furthermore, and more fundamentally, in considering entering a default judgment, the Court must consider "whether the unchallenged facts constitute a legitimate cause of action." *Corley v. Vance*, No. 15-CV-1800 (KPF), 2020 WL 1322270, at \*2 (S.D.N.Y. Mar. 20, 2020) (denying *pro se* plaintiff's motion for default judgment) (internal quotations and citation omitted). Plaintiff has failed to plead a legitimate cause of action against the State Defendants, including Defendant Pearl, because they are entitled to sovereign immunity.

---

[9] Defendant Pearl has defended against several actions brought by Plaintiff and there are six related cases to the present action, which may have contributed to Pearl's delay in responding to the present action.  Additionally, the Court notes that while Defendant Pearl is a representative of New York State, the same principles that dissuade courts from entering default judgment against the United States—namely, giving some leeway to governmental entities under the assumption that they are defending against other actions—apply here.  *See Marziliano v. Heckler*, 728 F.2d 151, 157–58 (2d Cir. 1984) ("[T]he government is sometimes slow to respond and [] the public fisc should be protected from claims that are unfounded but would be granted solely because the government failed to make a timely response.").

Thus, because Defendants have not "failed to plead or otherwise defend this case within the terms of Federal Rules of Civil Procedure 55," because there is no basis to find that the untimely responses by Defendant Gillespie, the State Defendants, and Defendant Pearl were willful, and because all of the State Defendants are entitled to sovereign immunity, the Court finds that no default judgment should enter against any Defendant. *Pushkin*, 2011 WL 4063493, at *1 (internal quotations omitted).

Accordingly, Plaintiff's motion for default judgment is denied.

## CONCLUSION

For the reasons explained above, Defendants' motions to dismiss are granted and this case is dismissed for failure to state a claim upon which relief may be granted. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 4, 2023
      Brooklyn, New York